IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, § § § § § § § § § § § § § *Plaintiff*, v. AMERICAN COLLEGE OF ALLERGY, ASTHMA & IMMUNOLOGY, et al.,, *Defendants*. | Civil Action No.  SA-15-CV-457-XR |

## ORDER

On this date came on to be considered Defendant American College of Allergy, Asthma & Immunology's ("ACAAI")'s motion for partial summary judgment (docket no. 13) and Plaintiff Great American Insurance Company of New York's Motion for Summary Judgment (docket no. 16).

## Background

Plaintiff Great American Insurance Company of New York ("Great American") filed its Complaint for Declaratory Judgment on June 2, 2015.  In its Complaint Great American seeks a declaratory judgment that it has no duty to defend a lawsuit captioned *Academy of Allergy & Asthma in Primary Care, et. al. v. American Academy of Allergy, Asthma & Immunology, et. al.* (Civil Action No. 5:14-cv-00035), pending in the United States District Court for the Western District of Texas, San Antonio Division (the "Underlying Lawsuit").  Great American contends that under its insurance policy with ACAAI, various policy definitions and exclusions provide no duty to defend or indemnify in the Underlying Lawsuit.  Alternatively, Great American argues

1

that defense coverage for the Underlying Lawsuit is limited to a maximum of $10,000 pursuant to an Antitrust Sublimit Endorsement.

In its motion for partial summary judgment Defendant ACAAI argues that it is entitled to judicial declaration of its counterclaim that Great American owed a duty to defend.  ACAAI also seeks summary judgment that Great American breached the insurance agreements with respect to its duty to defend.

## Analysis

### A.  Did the Underlying Lawsuit allege a potential covered liability?

Great American argues that in the Underlying Lawsuit, the Plaintiffs therein must have sought damages because of "personal and advertising injury."  In the CGL policy this phrase is defined as follows:

> 15. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
> a. false arrest, detention or imprisonment;
> b. malicious prosecution;
> c. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services; or
> e. oral, written or electronic publication of material that violates a person's right of privacy.
> f. the use of another's advertising idea in your "advertisement"; or
> g. infringing upon another's copyright, trade dress or slogan in your "advertisement."
> h. discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

Great American argues that in the Original Complaint filed in the Underlying Lawsuit and tendered for defense, no covered claim was asserted.  ACAAI argues that a "Personal and advertising injury" was asserted in the Underlying Lawsuit as defined in subparagraph d (oral,

2

written or electronic publication of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services).

In the Original Complaint filed in the Underlying Lawsuit, the Academy of Allergy & Asthma in Primary Care and United Biologics, LLC d/b/a United Allergy Services (collectively UAS) alleged that ACAAI and various other defendants conspired together to engage in anticompetitive acts to restrict competition in the provision of allergy testing and allergy immunotherapy. The Underlying Plaintiffs asserted causes of action under Section 1 of the Sherman Act, the Texas Free Enterprise and Antitrust Act, civil conspiracy, and tortious interference with current and prospective business relations. In their application for injunctive relief UAS sought an injunction that would preclude ACAAI from further contacting insurance companies and others about their services or business practices. UAS also sought an injunction that would preclude ACAAI from publishing statements to members of the medical profession attacking UAS or their services or business practices. Earlier in the Original Complaint, UAS alleged that ACAAI was sending correspondence to insurance companies and medical professionals critical of UAS's "remote practice" of allergy treatments to be of poor quality or fraudulent.

The law in this area has been summarized as follows in *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015):

> To determine whether an insurer has a duty to defend, Texas courts apply the eight-corners rule. 'Under that rule, courts look to the facts alleged within the four corners of the [third-party plaintiff's] pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy.' *Ewing Constr. Co. v. Amerisure Ins. Co., Inc.*, 420 S.W.3d 30, 33 (Tex. 2014). When reviewing the pleadings, courts must focus on the factual allegations, not the asserted legal theories or conclusions. *Id*. Courts consider the factual allegations 'without regard to their truth or falsity' and resolve 'all doubts regarding the duty to defend ... in the insured's favor.' *Id*. Even if the underlying

> complaint only 'potentially includes a covered claim, the insurer must defend the entire suit.' *Zurich Am. Ins. Co. v. Nokia, Inc*., 268 S.W.3d 487, 491 (Tex. 2008) (emphasis added).  'Thus, even if the allegations are groundless, false, or fraudulent the insurer is obligated to defend.' *Id*. (internal quotation marks, alteration, and citation omitted).  'Courts may not, however, (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage.' *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co*., 538 F.3d 365, 369 (5th Cir. 2008) (internal quotation marks and citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (per curiam) ('We will not read facts into the pleadings.). 'The insured has the initial burden to establish coverage under the policy.' *Ewing Constr. Co*., 420 S.W.3d at 33.

*Test Masters Educ. Servs., Inc*., 791 F.3d at 564.  In addition, Texas state courts have further stated that "[a]lthough we do not look outside the pleadings or 'imagine factual scenarios which might trigger coverage,' we interpret the allegations in the suit liberally to favor the insured." *Mid-Continent Cas. Co. v. Krolczyk*, 408 S.W.3d 896, 903 (Tex. App.—Hou. [1st Dist.] 2013) (*citing Nat'l Union Fire Ins. Co. v. Merch. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141–42 (Tex. 1997)).

In this case the factual allegations contained in the Underlying Lawsuit's Original Complaint are that ACAAI made statements to various health care providers that UAS's "remote practice" of allergy treatments was of poor quality or fraudulent.  Great American argues that "when read in whole and unaltered, it is clear that these allegations are directed at the services of individual physicians—not the Underlying Plaintiffs."  The Court disagrees.  For example, in paragraph 46 of the Underlying Lawsuit's Original Complaint, the Plaintiffs alleged that "[c]ommunications among the Defendants made clear that they intended to target competitor physicians and UAS, which was helping physicians treat allergy-related symptoms despite the absence of board certification."  In paragraph 47, the Plaintiffs alleged that an ACAAI board member wrote a letter to the Texas Medical Board seeking the TMB's discouragement of the practice of physicians relying upon allergy services like UAS.  In paragraph 48, the Plaintiffs

alleged that ACAAI complaints to the Texas Medical Board stated that physicians were providing substandard care when they relied upon support services from UAS. These allegations fell within the definition of "Personal and advertising injury" because it was an "oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services." Accordingly, there was a duty to defend, unless an exclusion completely precluded defense coverage.

### B. Did the Underlying Lawsuit's Original Complaint only allege facts excluded by the policy?

If the Original Complaint in the Underlying Lawsuit only alleged facts excluded by the policy, Great American is not required to defend. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).

ACAAI concedes that an exclusion[1] is applicable to the antitrust claims alleged in the Underlying Lawsuit, but argues that Great American was still required to tender a defense because at least one of the claims (tortious interference) was not subject to the exclusion.

In the CGL policy Great American agreed to provide coverage for certain "bodily injury" claims, "property damage" claims and certain "personal and advertising injury" claims. It is undisputed that the Underlying Lawsuit does not involve "bodily injury" claims or "property damage" claims. The question then becomes are tortious interference claims within the policy's definition of "personal and advertising injury" claims. Reviewing the policy's definition of "Personal and advertising injury" repeated above, tortious interference with contract claims are outside the definition and accordingly there was no duty to provide a defense of those claims.

---

[1] B. Exclusions. 1p. Personal and Advertising Injury. "(13) Arising out of a violation of anti-trust law."

5

Accordingly, the only question left here in this case remains whether a duty to defend existed to defend the Underlying Lawsuit when no cause of action was pled for libel, slander or business disparagement in the Original Petition. Great American relies upon *KLN Steel Products Co. v. CNA Ins. Companies*, 278 S.W.3d 429, 435 (Tex. App.—San Antonio 2008, rev. denied). In KLN, the underlying complaint alleged patent infringement, trade secret theft, unfair competition and deceptive trade practices by KLN. It further alleged that KLN overstated its status as the designer and developer of a SB–200 bed. The complaint, however, did not allege that KLN disparaged or published any negative remarks about the SB–200 bed or Hi–Tech. *Id.* at 439. Because there was no allegation in the underlying complaint that KLN disparaged Hi-Tech or its goods, services, or business, the Texas Court of Appeals concluded there was no duty to defend. But in this case, Great American's reliance on *KLN* is misplaced. The allegations in the original complaint did state that ACAAI made disparaging statements to various health care providers that UAS's "remote practice" of allergy treatments was of poor quality or fraudulent. Although the Original Complaint in the Underlying Lawsuit did not allege a cause of action for libel, slander, or business disparagement, the "insured need only show that a reasonable reading of the plaintiff's allegations would allow evidence of a claim that is covered by the policy, not that the claim itself be clearly enunciated within the pleadings." *Id*. at 435.

ACAAI met its initial burden of establishing that the business disparagement/slander allegation was within the scope of coverage provided under the policy, and although Great American established that the antitrust claims were excluded under the policy, and the tortious interference claim was not covered, Great American has failed to establish that the business disparagement/slander allegation (although not pled as a cause of action) was excluded from

6

coverage.  Given this Court's conclusions, there is no need to discuss whether any later amended petitions filed in the Underlying Lawsuit triggered the duty to defend.

### C. Does the Sublimit liability cap of $10,000 apply to the amount of defense costs incurred under the duty to defend?

Great American argues that the policy in this case contained a Sublimit Endorsement reducing the limits of liability to $10,000 for any claims based on antitrust, restraint of trade, or unfair competition, and that this monetary cap extends to the amount of monies incurred in defense costs.

The policy stated that the insured's duty to defend would end when it had "used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses." In addition, the policy provided under the phrase "Supplementary Payments" that in addition to the Limits of Insurance, it would pay all expenses the insurer incurs.

Great American argues that defense costs were subsumed in the endorsement's term of "supplementary payments."  The Court disagrees. Although an insured and insurer can agree to policy limits regarding amounts of liability, any attempt to limit the amount of attorney's fees to be expended in satisfying the duty to defend must be explicit.  *See Exxon Corp. v. St. Paul Fire & Marine Ins. Co.*, 129 F.3d 781, 788 (5th Cir. 1997) ("Because both limit of liability clauses in the policy in question are silent as to the deductibility of attorney's fees and defense costs, the ambiguity is to be construed in favor of the insured and a provision which seeks to narrow an insurer's obligation is to be construed against the insurer. Therefore, we affirm the district court's

holding and conclude that St. Paul's position that attorney's fees can be deducted from the policy limit is not supported by the words of the insurance policy itself."). [2]

## Conclusion

Defendant American College of Allergy, Asthma & Immunology's ("ACAAI")'s motion for partial summary judgment (docket no. 13) is GRANTED and Plaintiff's Motion for Summary Judgment (docket no. 16) is DENIED.  Great American owed a duty to defend ACAAI against the slander/business disparagement allegations made in the Underlying Lawsuit's Original Complaint.  The Court holds that the $10,000 limit provided in the Sublimit Endorsement does not apply to attorney's fees expended in the duty to defend.

This clerk is directed NOT to close this case inasmuch as the issue of damages for the breach of the duty to defend/breach of contract remains pending.

The parties are instructed to confer and propose a scheduling order to dispose of the remaining issues in this case no later than April 29, 2016.

It is so ORDERED.

SIGNED this 15th day of April, 2016.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[2] Great American relies upon *Trammell Crow Residential Co. v. Am. Prot. Ins. Co.*, 574 F. App'x 513, 516 (5th Cir. 2014).  In that policy, however, the APIC policy defined "claim expense" to mean...D. all reasonable expenses incurred by the insured and by us in 1. investigating an occurrence, offense, claim or "suit", 2. defending a "suit", 3. pursuing rights of recovery against others, and 4. investigating, defending and settling any coverage dispute under this policy.